STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: CV-06-098

DONALD L. GARBRECHT
LAW LIBRARY

MAY 16 2007

MATTHEW MORGAN

              Plaintiff

                                                  **ORDER ON DEFENDANTS'**
                                                  **MOTION FOR SUMMARY**
                                                  **JUDGMENT and MOTION TO**
                                                  **STRIKE AFFIDAVIT**

   v.                                             STATE OF MAINE
                                                  Cumberland ss, Clerk's Office
                                                  SUPERIOR COURT

                                                  FEB _ ? _ _

JOHN KOOISTRA, et al.
              Defendants

RECEIVED

This matter comes before the Court on Defendants' motion for summary

judgment on all counts of the complaint pursuant to M.R. Civ. P. 56(c) and

motion to strike Plaintiff's affidavit.

## BACKGROUND

Plaintiff Matthew Morgan ("Morgan") is a former firefighter and

paramedic with the City of Portland. Morgan first worked for the City as a

police officer from 1990 to November 2000, when he transferred to the fire

department, where he worked as a paramedic. Defendant John Kooistra

("Kooistra") is a paramedic with the City of Portland Fire Department, where

Defendant Terry Walsh ("Walsh") also works as Deputy Chief. Defendant City

of Portland ("the City") is a Maine Municipal Corporation.

Morgan alleges that, during his employment with the fire department,

Walsh defamed him. In February 2004, a female paramedic named Heather

Carleton informed Walsh that she did not want to work with Morgan because he

1

made her uncomfortable by allegedly ogling her.[1] Walsh talked to the Fire Chief and the City's Director of Human Resources about how to address this and was told to begin an investigation because the Director was going on vacation. Before this complaint, two female employees of Maine Medical Center allegedly had approached Walsh to complain about Morgan's behavior, but because they did not officially complain, Walsh did nothing about those matters. He did, however, inform Carleton that she was not the only person who had complained about Morgan. After completing his review of what he termed a "sexual harassment" complaint, Walsh recommended disciplinary action. Ultimately, the Chief decided to reprimand Morgan, and notice of that would remain in his file for ninety days. The union filed a grievance on Morgan's behalf, and during a hearing, Walsh testified about the investigation and also stated that he personally had seen Morgan give a female employee "elevator eyes."

Morgan also worked with Kooistra for several years. The two had been friendly and socialized together. On one evening in 2002, a friend of Kooistra's named Heather Wood Dunn told him that Morgan had taken her home from a bar when she was intoxicated and they had unprotected sex. She felt that Morgan took advantage of her intoxicated state. In addition, Kooistra's then-girlfriend, Michelle Labbe Plazeski, told Kooistra that Morgan also took her home from a bar one night when she was too intoxicated to drive, and they kissed. Morgan denies that anything happened and claims that he resisted her advances. Kooistra felt that Plazeski insinuated that Morgan attempted to sexually assault her. Kooistra repeated these allegations to co-workers and to

---

[1] The term the parties use for this is "elevator eyes," that is, looking Carleton up and down. She felt as if he were "undressing her with his eyes" and looking at her backside when she was bending over.

2

other women, including Kathie Grant, Marni Bickford, and Tiffany Bombard, in an apparent attempt to warn them about Morgan. Morgan claims that Kooistra told these women that Morgan forced himself on other women, that he was dangerous, and that they should be careful around him. The women have testified in their depositions that they got the impression from Kooistra that Morgan had sexually assaulted women, or at least behaved inappropriately.

In terms of damages, Morgan states that these various comments made by Walsh and Kooistra have resulted in a reprimand and a brief suspension with pay while the investigation was conducted. He was also transferred to an engine with less patient contact, although Defendants contend that he chose to be transferred.[2] Additionally, Morgan believes that these statements, as well as the investigation of the Carleton complaint, diminished his reputation in the professional community. He voluntarily resigned from the fire department in July 2006 and is now a medical student at the University of New England.

In February 2006, Morgan filed this complaint, alleging defamation against Kooistra and the City (Count I), tortious interference with contractual relations against Kooistra and the City (Count II), punitive damages against Kooistra and the City (Count III), defamation against Walsh and the City (Count IV), and punitive damages against Walsh and the City (Count V). The Defendants responded with a number of affirmative defenses, including the truth of the statements, immunity under the Maine Tort Claims Act, and failure to state a claim upon which relief could be granted.[3] Defendants now move for

---

[2] Morgan also was not promoted during his tenure with the fire department; however, he did not take the test required to be eligible for promotion.

[3] Defendants also contend that the Worker's Compensation Act covers personal injuries, and therefore those claims Morgan raises are barred; however, "economic or reputational injuries, if

3

summary judgment, arguing that they are entitled to judgment as a matter of law because the statements were true, were not defamatory, and protected by privilege and/or discretionary function immunity. Morgan contends that genuine issues of material fact remain in contention, and that the statements were false and defamatory.

## DISCUSSION

### 1. Summary Judgment Standard.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. When a defendant seeks summary judgment, a "plaintiff must establish a prima facie case for each element of her cause of action." *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 845. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

### 2. Is Summary Judgment Warranted on the Defamation Claim?

To prevail on a defamation claim, a plaintiff must establish:

---

any, do not constitute personal injuries." *Cole v. Chandler*, 2000 ME 104, ¶ 13, 752 A.2d 1189, 1196. Thus, the Act does not preclude Morgan from recovering in tort.

(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either action ability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Rice v. Alley*, 2002 ME 43, ¶ 19, 791 A.2d 932, 936 (quoting *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991)).

Even if a speaker publishes defamatory statements, however, he or she may not face liability for those statements if the publication is "conditionally privileged" and "the privilege is not abused." *Restatement (Second) of Torts* § 593 (1977). The circumstances of publication govern whether a conditional privilege applies, but it usually will attach where "an important interest of the recipient will be furthered by frank communication." *Rice*, 2002 ME ¶ 22, 791 A.2d at 936 (citations omitted). A speaker who is otherwise entitled to a conditional privilege may lose it if he or she knows that the information is false or acts with "reckless disregard as to its truth or falsity." *Restatement (Second) of Torts* § 600. Whether a speaker is entitled to a privilege is a legal question. *Cole v. Chandler*, 2000 ME 104, ¶ 6, 752 A.2d 1189, 1193. Whether the privilege was abused is a factual issue. *Id.* ¶ 7, 752 A.2d at 1194.

In addition, government employees are entitled to immunity under the MTCA for "performing or failing to perform a discretionary function or duty, whether or not the discretion is abused." 14 M.R.S. § 8104-B(3) (2005). To determine whether an act is a discretionary function, the Law Court employs a four-factor test: (1) whether the act "involve[s] a basic governmental policy, program, or objective; (2) whether the act was "essential to the realization" of the policy; (3) whether it demanded "the exercise of basic policy evaluation,

judgment, and expertise;" and (4) whether the agency had legal "authority and duty" to act. *Adriance v. Town of Standish*, 687 A.2d 238, 240 (Me. 1996) (*citing Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 426 (Me. 1987)).

### a. Defamation Claim Against Walsh.

Morgan concedes that in a situation such as this, a conditional privilege normally would apply to Walsh's statements; however, he contends that it should not apply because Walsh acted either knowing that the statements were false or with reckless disregard of their truth. Morgan argues that Walsh defamed him by telling Carleton there were other women complaining about him, and by stating that he had seen Morgan act inappropriately around women, including giving them "elevator eyes."

### Conditional Privilege

Walsh, however, was acting within the scope of his employment when he relayed Carleton's comments about Morgan while speaking with his supervisor to determine how to handle the complaint. Then, at the direction of his supervisor, he investigated the matter and issued a report. Walsh is entitled to a conditional privilege for his statements because he was conducting an investigation, as he was instructed to do. Even if Morgan is correct that Walsh erroneously reported some details in his report, error does not remove the conditional privilege.

The inquiry, however, does not end here. Carleton herself testified in her deposition that she did not recall making all of the statements that Walsh attributed to her, such as that Morgan made offensive body gestures to her. She also stated that she did not characterize Morgan's behavior as sexual harassment, and did not state that it happened on duty. Additionally, Walsh cannot locate

6

Carleton's initial statement. Viewing the matter in the light most favorable to the plaintiff, Walsh may have inaccurately recorded or transmitted Carleton's statements, which he published to the Chief and at the later hearing. Moreover, Morgan alleges that Walsh told Carleton that he had received other complaints against Morgan, which was not necessary to his performance of his duties as Deputy Chief. This generates a genuine issue of material fact as to whether the privilege was abused.

The fact finder will have to determine whether the statements were true or false, and whether Walsh acted recklessly. If not, his privilege would shield him from liability for those statements. But, if a jury determines that he did act recklessly, the privilege would not apply to those statements.

Discretionary Function Immunity

Turning to immunity, Walsh cannot meet the four-factor test for a discretionary function set forth in *Adriance*. Although Morgan concedes in his deposition that Walsh had a responsibility to investigate this claim, it was not typically Walsh's responsibility to do that. He only conducted an investigation because the Human Resources Director was on vacation at the time. Walsh was acting within the scope of his employment when he testified in the union appeal that he personally had seen Morgan behave inappropriately toward women, but this too does not rise to the level of a discretionary function, and Walsh is not entitled to immunity on that basis. As there are genuine issues of material fact with respect to the truth or falsity of Walsh's statements, and with regard to whether he acted recklessly and lost the privilege, summary judgment for Walsh is denied.

7

b.     Defamation Claim Against Kooistra.

Kooistra also argues that he is entitled to a conditional privilege and/or immunity for statements he made about Morgan. Morgan alleges that the statements were made in the course of Kooistra's employment, and Kooistra agrees with that contention. Making comments to colleagues, however, does not bring Kooistra's statements about Morgan within the scope of employment. There was no supervisory relationship between Kooistra and Morgan, and no other evidence that would support a finding that these comments were employment-related. Indeed, Kooistra admits that his motivation in making the comments was concern about his female friends and co-workers.

As no privilege or immunity applies, this Court will assess the merits of Morgan's claim for defamation as it pertains to Kooistra's statements. Morgan contends that Kooistra defamed him by telling their co-workers that he had sexually assaulted women, or at least engaged in sexually inappropriate behavior. Specifically, he claims that Kooistra told others that Morgan forced himself on Michelle Labbe Plazeski and Heather Wood Dunn. He also apparently told people that Michelle Plazeski "felt threatened" by Morgan. These statements, viewed in the light most favorable to Morgan, are capable of conveying a defamatory meaning because some evidence supports his contention that they were not entirely accurate. Also, unprivileged publications to third parties occurred, and some evidence indicates that the statements were negligently made, as the women who heard them described several different versions of them. Lastly, Defendants concede for purposes of this motion that Morgan need not prove special harm because the comments, if defamatory,

8

would be defamatory per se.[4] The primary genuine issue of material fact for the jury will be whether the statements actually were false and defamatory. Summary judgment is therefore denied as to Kooistra.

### 3. Is Defendant City of Portland Entitled to Immunity under the Maine Tort Claims Act?

Next, this Court must determine whether the City has immunity pursuant to the Maine Tort Claims Act. The City argues that it cannot be held responsible for the alleged acts of its employees in this case and is therefore entitled to summary judgment on the defamation claims. Morgan contends that Kooistra and Walsh made their allegedly defamatory comments while working and that the City faces liability on a respondeat superior theory.

The MTCA provides that governmental entities typically are immune from liability for the intentional torts of their employees. 14 M.R.S. § 8103(1) (2005). Although governmental *employees* face liability for their intentional torts, "immunity is the rule and liability the exception for *governmental entities.*" *Carroll v. City of Portland*, 1999 ME 131, ¶ 6 n.3, 736 A.2d 279, 282.

Here, Morgan concedes that the City is not liable for the wrongful actions of its employees who are not acting within the scope of their employment. Thus, the City may not be held responsible for Kooistra's allegedly defamatory statements. Though he was working when he made some of the statements, he was not acting within the scope of his employment by making them, and he was not entitled to any employment-related privilege.[5] With respect to Walsh, viewing the matter in the light most favorable to Morgan, Walsh did make his

---

[4] "Slander per se refers to words that on their face without further proof or explanation injure the plaintiff in his business or occupation." *Ramirez v. Rogers*, 540 A.2d 475, 478 (Me. 1988). Given the nature of the injury, a "plaintiff may recover without proof of special damage." *Id.*

[5] The City also correctly points out that it cannot face punitive damages. See 14 M.R.S. § 8105(5).

9

statements in the course of his employment with the fire department. Although abuse of privilege is debatable, Walsh's statements are conditionally privileged at this point and the City will not be liable for them. Summary judgment is granted for the City.

4.  Are Defendants Entitled to Summary Judgment on Morgan's Claim for Tortious Interference With Contractual or Other Advantageous Economic Relations?

Lastly, Defendants have moved for summary judgment on Morgan's claim for tortious interference with contractual or other advantageous economic relations. Morgan concedes that Defendants are entitled to summary judgment on this count of the complaint, and summary judgment is therefore granted in favor of Kooistra and the City on this issue.

5.  Defendants' Motion to Strike Morgan's Affidavit.

Defendants also move to strike certain testimony from Morgan's affidavit because the affidavit differs from his prior testimony. *See Zip Lube, Inc. v. Coastal Savings Bank*, 1998 ME 81, ¶ 10, 709 A.2d 733, 735 (holding that a litigant may not generate a genuine issue of material fact by providing an affidavit that contradicts his prior testimony).

Here, Defendants contend that Morgan has attempted to generate a genuine issue of material fact by changing the testimony that he gave at his earlier deposition. Specifically, he stated at his deposition that he could not recall having met Heather Wood Dunn. Morgan contends that his testimony has not changed, but that his recollection merely has been refreshed since the deposition. Now he does remember meeting Dunn, but still maintains that he

10

did not go home with her from a bar. Because that substantive portion of his testimony remains the same, the affidavit will not be stricken.

The entry is:

Defendants' motion to strike affidavit is DENIED. Defendants' motion for summary judgment on the claim for tortious interference is GRANTED. Defendants' motion for summary judgment on claims against the City of Portland is GRANTED. Defendants' motion is DENIED as to Kooistra and Walsh on all other counts.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: _February 22, 2007_

Roland A. Cole
Justice, Superior Court

11

'F COURTS
and County
Box 287
ine 04112-0287

JODI NOFSINGER ESQ  _ $\rho$ |
PO BOX 961
LEWISTON ME 04243

'F COURTS
and County
Box 287
ne 04112-0287

MARK DUNLAP ESQ
PO BOX 4600
PORTLAND ME 04112